```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
BRIGITTE STELZER,                               :
                                                :
                              Plaintiff,        :         MEMORANDUM AND ORDER
                -against-                       :         23-cv-4264 (DLI)(TAM)
                                                :
WANG LAW OFFICE, PLLC,                          :
                                                :
                              Defendant.        :
-----------------------------------------------------------x
```

**DORA L. IRIZARRY, United States District Judge:**

On June 9, 2023, Plaintiff Brigitte Stelzer ("Stelzer" or "Plaintiff") initiated this suit against Wang Law Office, PLLC ("Defendant") alleging: (1) that it infringed on her copyrighted photograph by using it without her permission; and (2) violated of the Digital Millenium Copyright Act ("DMCA") by failing to credit her as the photographer. Complaint, Dkt. Entry No. 1. On September 22, 2023, Defendant moved to dismiss the case and, in response, Plaintiff filed an amended complaint that, among other things, added vicarious and contributory infringement claims. *See*, Def's. First Mot. to Dismiss, Dkt. Entry No. 13; Amended Complaint ("Am. Compl."), Dkt. Entry No. 14. On October 10, 2023, the Court denied the first motion to dismiss as moot because of the Amended Complaint. Oct. 10, 2023 Order. Defendant thereafter filed the instant motion to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b) for insufficient service of process, failure to join a necessary party, and failure to state a claim. Def's. Second Mot. ("Def's. Mot."), Dkt. Entry No. 15-1. Plaintiff opposed the motion. Pl. Opp'n ("Opp'n"), Dkt. Entry No. 16. Defendant did not reply.

For the reasons set forth below, Defendant's motion to dismiss for failure to state a claim is granted in part and denied in part. Defendant's motion to dismiss for insufficient service of process and failure to join a necessary party is denied in its entirety.

**BACKGROUND**

Except as otherwise indicated, the following facts are as alleged in the Amended Complaint. Plaintiff is a professional photographer who commercially licenses her photographs for a fee. Am. Compl. ¶ 12. Defendant is a law firm in Queens, New York. *Id.* at ¶¶ 3, 8. On January 17, 2022, Plaintiff took a photograph of Manhattan District Attorney Alvin Bragg speaking in a subway station (the "Photograph"). *Id.* at ¶ 16 & Ex. 1. That same day, Plaintiff licensed the Photograph to the New York Post, which it published in an article discussing Bragg's stance on criminal justice reform (the "New York Post Article"). *Id.* at ¶¶ 68, 101 & Ex. 5; *See also*, Embattled Manhattan DA Alvin Bragg huddles with PR pro, Preet Bharara over soft-on-crime uproar, https://nypost.com/2022/01/17/alvin-bragg-huddles-with-pr-pro-prett-bharara-over-soft-on-crime-uproar/. The New York Post Article credited Plaintiff as the photographer by including her name beneath the Photograph (the "Gutter Credit"). Am. Compl. ¶ 101 & Ex. 5. On April 12, 2022, Plaintiff registered the Photograph with the United States Copyright Office under registration number VA 2-299-318. *Id.* at ¶ 18 & Ex. 2.

On January 20, 2022, Defendant displayed the Photograph without crediting Plaintiff in an article posted to: (1) its website; and (2) an account it allegedly controlled on CCYP.com, a Chinese language business marketing platform. *Id.* at ¶¶ 4, 37–41, 54–56 & Ex. 3; *See also*, CCYP "About Us" Page, https://www.ccyp.com/home/aboutus ("CCYP is the go-to platform for business services, marketing and information."). Plaintiff alleges that Defendant markets its legal services on its website and the CCYP account. Am. Compl. ¶¶ 29–36. Plaintiff's allegation that Defendant controls the CCYP account is supported by the following: (1) Defendant's CCYP profile lists contact information that also appears on Defendant's website, *Id.* Ex. 4; *See also*, Defendant's Website, www.wanglawoffice.com; (2) the CCYP post includes a text box with Defendant's

contact information, practice areas, and a link to www.wanglawoffice.com, Am. Compl. Ex. 3; and (3) the article on CCYP matches the article on Defendant's website, at least in the excerpts provided to the Court. *Id.*

Plaintiff attempted to notify Defendant of its infringing activity on three separate occasions, including at wlo@wanglawoffice.com, one of the email addresses Defense Counsel uses for this case, but it did not respond. *Id.* at ¶¶ 20–25; Notice of Appearance, Dkt. Entry No. 10. The Photograph was taken down from Defendant's website sometime after October 6, 2023, but the CCYP post remains active. Opp'n at 12 n.1, 16; Am. Compl. ¶ 39 & Ex. 3 at 2 (capture date displayed in bottom right corner). Plaintiff alleges that Defendant's infringement was willful and diminished the market for the Photograph. *Id.* at ¶¶ 49–53, 61–62.

Defendant asserts that dismissal is warranted because: (1) service of process was improper as Defendant did not receive the summons and complaint from the Secretary of State; (2) CCYP is a necessary and indispensable party that has not been joined; and (3) Plaintiff failed to state a copyright infringement or DMCA claim. Def's. Mot. at 7–18. Plaintiff counters that: (1) Defendant was served properly through the New York Secretary of State; (2) joint and several infringers such as CCYP are not necessary parties; and (3) she has stated a copyright infringement and DMCA claim. Opp'n at 13–26.

## LEGAL STANDARDS AND ANALYSIS

### I. Improper Service of Process

#### A. Legal Standard

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5), the plaintiff bears the burden of showing that service was sufficient. *Khan v. Khan*, 360 F. App'x 202, 203 (2d Cir. 2010) (citing *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005)). "[T]he court may look beyond

3

the pleadings, including to affidavits and supporting materials, to determine whether service was adequate." *Martin v. Designatronics Inc.*, 2019 WL 482202, at *5 (E.D.N.Y. Feb. 7, 2019).

**B.     Analysis**

Service of both the initial and Amended Complaint was proper.  Defendant was served with the initial Complaint through the New York Secretary of State.  *See*, Affidavit of Service, Dkt. Entry No. 6.  Defendant contends that: (1) "the clerk has not been authorized by the Secretary of State" to receive service; and (2) it did not receive the summons and complaint until Plaintiff sought default several months after service.  Def's. Mot. at 7, 18.  However, Plaintiff provided uncontroverted evidence that Defendant is registered with New York's Department of State as a Professional Service Limited Liability Company.  *See*, Department of State Record, Dkt. Entry No. 16-3.

By operation of state and federal law, the Secretary of State was authorized as Defendant's agent to accept service of process, and service was complete upon service to the Secretary of State. *See*, Fed. R. Civ. P. 4(h), (e); N.Y. Limited Liability Company Law §§ 301(a), 303; N.Y. C.P.L.R. § 311-A.  Denying receipt is not enough.  *Coyle v. Mayer Realty Corp.*, 54 A.D.3d 713 (2d Dept. 2008) ("[M]ere denial of receipt of a summons and complaint [is] insufficient to rebut the presumption of proper service created by the affidavit of service [through the Secretary of State]."); *Commissioners of State Ins. Fund v. Nobre, Inc.*, 29 A.D.3d 511, 511 (2d Dept. 2006) (same). Notably, Defendant already had appeared in the case when Plaintiff filed the Amended Complaint. *See*, Notice of Appearance, Dkt. Entry No. 10.  Thus, Defendant was served with the Amended Complaint through the Electronic Case File System.  *See*, Fed. R. Civ. P. 5(a)(1)(B), (b)(2)(E). Accordingly, Defendant's motion to dismiss for lack of proper service is denied.

## II.     Failure to Join Necessary Party

### A.     Legal Standard

Fed. R. Civ. P. 12(b)(7) provides that an action may be dismissed for failure to join necessary parties. Fed. R. Civ. P. 12(b)(7). "The burden of demonstrating that a party is necessary falls to defendants." *Bodner v. Banque Paribas*, 114 F. Supp.2d 117, 137 (E.D.N.Y. 2000). "The Second Circuit has set forth a 'two-step test for determining whether the court must dismiss an action for failure to join an indispensable party.'" *DePasquale v. DePasquale*, 2013 WL 789209, at *3 (E.D.N.Y. Mar. 1, 2013), *reconsideration denied*, 2013 WL 4010214 (E.D.N.Y. Aug. 5, 2013) (quoting *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000)). First, the court must determine whether a party is necessary pursuant to Fed. R. Civ. P. 19(a), which provides, in relevant part, that a party must be joined if, "in that person's absence, the court cannot accord complete relief among existing parties." *Id.* Second, if a necessary party cannot be joined, the court then must determine whether the party's absence warrants dismissal pursuant to Rule 19(b) because the party also is indispensable. *Id.* (citing *Kearney*, 212 F.3d at 725).

### B.     Analysis

CCYP is neither a necessary nor an indispensable party. As discussed further below, CCYP, at most, could be jointly and severally liable for hosting Defendant's infringing post on its website. *See*, *Myeress v. BuzzFeed Inc.*, 2019 WL 1004184, at *4 (S.D.N.Y. Mar. 1, 2019) (denying motion to dismiss case against news outlet even though infringing use "was posted by a third party to the Community Section of Defendant's Website"). However, joint and several infringers are not necessary parties. *See*, *Fifth Ave. of Long Island Realty Assocs. v. Caruso Mgmt. Co.*, 2009 WL 412126, at *17 (E.D.N.Y. Feb. 17, 2009) ("Infringers who may be found jointly and severally liable are not necessary parties."). Indeed, it is "well settled that a plaintiff may sue

5

as few joint tortfeasor copyright infringers as he chooses, and 'those left out of the lawsuit . . . are not indispensable parties.'" *Capitol Recs., Inc. v. MP3tunes, LLC*, 2012 WL 2389751, at *2 (S.D.N.Y. June 25, 2012) (quoting *Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 358 (2d Cir. 2000)). Defendant contends that, without joining CCYP, its ability to show that they did not have a relationship will be hampered. Defs.' Mot. at 15. However, Defendant has not explained why it could not use discovery tools, such as a third party subpoena, to gather the evidence it seeks. Thus, Defendant has failed to meet its burden of demonstrating that CCYP is a necessary party.

### III. Failure to State a Claim

#### A. Legal Standard

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard "does not require 'detailed factual allegations,' but it demands more than . . . unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court accepts as true all well pled factual allegations and draws all reasonable inferences in the plaintiff's favor. *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (citations omitted). Nevertheless, "threadbare recitals of the elements of a cause of action" that are supported by "conclusory" statements and mere speculation are inadequate and subject to dismissal. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted); *See also*, *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. . . . Pleadings that are no more than conclusions are not entitled to the assumption of truth.") (internal quotation marks and modifications omitted).

The court's duty "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 113 (2d Cir. 2010).

While the Court generally considers only facts alleged in the complaint or contained in documents attached or incorporated by reference, other facts and documents can "be appropriately considered if [they are those] upon which the complaint solely relies and [are] integral to the complaint." *Lohan v. Perez*, 924 F. Supp.2d 447, 453 (E.D.N.Y. 2013) (modifications, quotations, and internal citation omitted). "The Court may properly consider 'documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" *Spinnato v. Unity of Omaha Life Ins. Co.*, 322 F. Supp.3d 377, 399 (E.D.N.Y. 2018) (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)). In addition, "a court may consider . . . matters of which judicial notice may be taken." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks omitted). [1]

### A.  Copyright Infringement Claims

To state a claim for copyright infringement, a plaintiff must establish: (1) ownership of a valid copyright; and (2) that the defendant copied constituent elements of the work that are original. *Feist Publ'n, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Copyright infringement is a strict liability offense, meaning that "intent or knowledge is not an element . . .". *Fitzgerald Publ'g. Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1113 (2d Cir. 1986).

#### 1.  Ownership

"A certificate of copyright registration is prima facie evidence of ownership of a valid

---

[1] The following are incorporated by reference in and are integral to the Amended Complaint: (1) The New York Post Article, Am. Compl. ¶ 101; (2) Defendant's website at www.wanglawoffice.com, *Id.* at ¶ 5 & Ex. 3; and (3) CCYP's website at cn.ccyp.com and the allegedly infringing post at https://cn.ccyp.com/ccypContents?content_id=175302. *Id.* at ¶¶ 4, 37 & Ex. 3.

7

copyright, but the alleged infringer may rebut that presumption." *Scholz Design, Inc. v. Sard Custom Homes, LLC*, 691 F.3d 182, 186 (2d Cir. 2012) (citing *MyWebGrocer, LLC v. Hometown Info, Inc.*, 375 F.3d 190, 192 (2d Cir. 2004)).  Attached to the Amended Complaint was a certificate of copyright registration for the Photograph.  *See*, Am. Compl. Ex. 2.  Thus, the Court presumes that Plaintiff owns a valid copyright.

Defendant contends that Plaintiff's copyright is invalid because: (1) the New York Post became the "proper Plaintiff" when Stelzer licensed the Photograph to it; and (2) the Photograph is a "work of the United States Government" because it depicts a public official, and, thus, is not entitled to copyright protection pursuant to 17 U.S.C. § 105(a).  Def's. Mot. at 9.  However, these arguments lack merit.  Plaintiff does not allege that she *assigned* or *transferred* ownership of the Photograph to the New York Post, she merely licensed it for commercial use.  *See*, Opp'n at 14–15; Am. Compl. ¶ 68.  Furthermore, while Section 105 of the Copyright Act provides that copyright protection "is not available for any work of the United States Government," the fact that the Photograph *depicts* a state prosecutor does not make it the federal government's work.  17 U.S.C. § 105(a).  The copyright belongs to Plaintiff, not the United States Government or the New York Post.

### 2. Unlawful Copying

The Amended Complaint alleges the copying element sufficiently at this stage.  To establish unlawful copying, a plaintiff must allege that: "(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's [work]." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 110 (2d Cir. 2001).  "In practice, the question of 'actual copying' by a defendant can be collapsed into the question of whether the defendant's work is substantially similar to the

plaintiff's, and whether the alleged infringer had access to the protected work, so as to permit the inference of copying." *Eng v. Baldwin*, 2014 WL 2465763, at *2 (E.D.N.Y. May 30, 2014).

There is no question that Defendant had access to the Photograph, as it was publicly available through the New York Post. Furthermore, a side by side comparison of the original photo to the infringing uses shows that they are identical. *See*, Am. Compl. Exs. 1, 3; *See also*, *Smith v. L. Off. of Richard St. Paul, Esq., PLLC*, 2023 WL 3570606, at *4 n.6 (S.D.N.Y. May 18, 2023) ("Even if defendant did not admit it copied the Photograph, plaintiff's well-pleaded allegations that defendant reproduced the [news] [a]rticle with the Photograph are sufficient to establish copying."); *Jeremiah v. 5 Towns Jewish Times, Inc.*, 2023 WL 6593997, at *5 (E.D.N.Y. Aug. 9, 2023), *report and recommendation adopted*, 2023 WL 5703698 (E.D.N.Y. Sept. 5, 2023) (granting default judgment as to liability where plaintiff provided a screenshot that "display[ed] an exact copy of the Photograph" on defendant's website).

Defendant argues that the copying element is not satisfied because: (1) Plaintiff did not include hyperlinks to the infringing uses; and (2) Defendant is not liable for the post on CCYP because it is not Defendant's website. Def's. Mot. at 5, 10–11. However, these arguments are baseless and do not undermine Plaintiff's claims.

First, the Amended Complaint and its exhibits do, in fact, include hyperlinks to the allegedly infringing uses. *See*, Am. Compl. ¶¶ 37–38, 40–41 & Ex. 3. Moreover, Defendant does not explain why hyperlinks are necessary in light of the screenshots showing the infringing uses.

Second, Defendant cannot escape liability simply by claiming that CCYP is a third party. Plaintiff alleges that Defendant *controlled an account* on CCYP and posted the Photograph there. Am. Compl. ¶¶ 3, 28–31, 37–39. Accepting this allegation as true, Defendant's post on CCYP would constitute direct copyright infringement. *See*, *Cruz v. Cox Media Grp., LLC*, 444 F. Supp.3d

9

457, 463, 466 (E.D.N.Y. 2020) (defendant liable for copyright infringement where it posted plaintiff's photograph "on [its] . . . website, as well as on [third party sites like] Twitter and Facebook"). Plaintiff's allegation that Defendant controlled the CCYP account is supported by the fact that: (1) Defendant's CCYP profile lists contact information that also appears on Defendant's website, *See*, Am. Compl. Ex. 4 and Defendant's Website, www.wanglawoffice.com; (2) the CCYP post includes a text box with Defendant's contact information, practice areas, and a link to www.wanglawoffice.com, Am. Compl. Ex. 3 at 1; and (3) the article on CCYP matches the article on Defendant's website, at least in the excerpts provided to the Court. *Id.* Accordingly, whether Defendant controls CCYP in its entirety is irrelevant. *See*, Def's. Mot. at 5, 11.

Finally, even if Defendant did not control an account on CCYP, Plaintiff also alleges that Defendant posted the Photograph on *its own website* until at least October 6, 2023. Am. Compl. ¶¶ 40–41 & Ex. 3; Opp'n at 17. Defendant does not dispute that it controls www.wanglawoffice.com. Accordingly, Defendant also may be liable for that past infringement even though the post was taken down. *See*, *Golden v. Michael Grecco Prods., Inc.*, 524 F. Supp.3d 52, 59–60 (E.D.N.Y. 2021) (photographer entitled to summary judgment on copyright infringement counterclaim even though infringer "immediately . . . took down the [photograph] upon receiving the notice").

### 3. Originality

Plaintiff also has alleged facts sufficient to plead the originality element. Originality "means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Feist Publ'ns*, 499 U.S. at 345 (citation omitted). "[T]he requisite level of creativity is extremely low" and "[t]he vast majority of works make the grade quite easily, as they possess some creative spark, no matter how

crude, humble or obvious it might be." *Id.* (internal quotation marks and citation omitted).

A photograph's originality "may be founded upon . . . [its] subject matter, angle of photograph, lighting, determination of the precise time when the photograph is to be taken, the kind of camera, the kind of film, the kind of lens, and the area in which the pictures are taken." *Pasatieri v. Starline Prods., Inc.*, 2020 WL 207352, at *2 (E.D.N.Y. Jan. 14, 2020) (citation omitted); *Cruz*, 444 F. Supp.3d at 465 ("[A]lmost any photograph may claim the necessary originality to support a copyright."). Moreover, certificates of registration "constitute prima facie evidence of the validity not only of [plaintiffs'] copyrights, but also of the originality of their works." *Boisson v. Banian, Ltd.*, 273 F.3d 262, 268 (2d Cir. 2001). A defendant may rebut this presumption with "evidence that clearly demonstrates that plaintiff's images lack originality." *FragranceNet.com, Inc. v. FragranceX.com, Inc.*, 679 F. Supp.2d 312, 319–20 (E.D.N.Y. 2010); *See also*, *Scholz Design, Inc. v. Sard Custom Homes, LLC*, 691 F.3d 182, 186 (2d Cir. 2012).

Here, Defendant claims that the Photograph lacks originality because it depicts "a government official speaking at a press conference," which is in the "public domain, and not an original work of the photographer." Def's. Mot. at 10. However, Plaintiff alleges that she "personally selected the subject matter, timing, lighting, angle, perspective, depth, lens and camera equipment used to capture the image." Am. Compl. ¶ 17. These allegations are sufficient to survive a motion to dismiss. The fact that the subject of the Photograph is a public event does not mean that the Photograph itself lacks the requisite originality.

    **4.**    **Fair Use**

Accepting Plaintiff's allegations as true, Defendant has failed to establish that the fair use defense applies as a matter of law. The fair use doctrine is codified at 17 U.S.C. § 107 and provides that "the fair use of a copyrighted work, including such use . . . for purposes such as criticism,

11

comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107. To determine whether a use is fair, courts must consider the following non-exhaustive factors: "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit education purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." *Id.*

The determination of fair use is an "open-ended and context-sensitive inquiry," and "a mixed question of fact and law." *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 81 (2d Cir. 2014) (citations omitted). Defendants "bear the burden of proving that their use was fair . . . [but] they need not establish that each of the factors set forth in § 107 weighs in their favor." *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 476–77 (2d Cir. 2004) (internal citation omitted). Due to the fact intensive nature of the doctrine, courts "most frequently address a proffered fair use defense at summary judgment." *See*, *TCA Television Corp. v. McCollum*, 839 F.3d 168, 178 (2d Cir. 2016); *BWP Media USA, Inc. v. Gossip Cop Media, LLC*, 87 F. Supp.3d 499, 505 (S.D.N.Y. 2015) ("[While] it is possible to resolve the fair use inquiry on a motion to dismiss . . . there is . . . a dearth of cases granting such a motion.").

The first factor weighs against fair use because Defendant's use was not transformative. "If an original work and a secondary use share the same or highly similar purposes, and the secondary use is of a commercial nature, the first factor is likely to weigh against fair use, absent some other justification for copying." *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 532–33 (2023). As Plaintiff points out, Defendant's use of the Photograph shares the same journalistic purpose as the original. Opp'n at 21–22; *Smith*, 2023 WL 3570606 at *5

12

(rejecting law firm's assertion that it copied Plaintiff's photograph "to make the public aware that HUD and its leadership were working to address issues in New York City Public Housing" because there was "no meaningful difference between defendant's professed purpose and the [original] photojournalistic purpose").

Simply characterizing a use as "news reporting" does not make that use transformative. While "the Copyright Act, at 17 U.S.C. § 107, cites 'news reporting' as one method of fair use, the promise of copyright would be an empty one if it could be avoided merely by dubbing the infringement a fair use 'news report.'" *Golden*, 524 F. Supp.3d at 61 (internal quotation marks and citation omitted); *See also*, *Cruz*, 444 F. Supp.3d at 468 (applying fair use to photographs of newsworthy events would "eliminate copyright protection any time a copyrighted photograph was used in conjunction with a news story about the subject of that photograph . . . [which] is plainly not the law" (citation omitted)). Defendant claims that it published articles for "nonprofit educational purposes to inform [the public] of new legal developments." Def's. Mot. at 13. However, a reasonable jury could find that Defendant's use was motivated, at least in part, by a desire to attract clients to its business. *See*, *Hachette Book Grp., Inc. v. Internet Archive*, 664 F. Supp.3d 370, 383 (S.D.N.Y. 2023) (nonprofit online library's infringement was commercial since it "use[d] its Website to attract new members, solicit donations, and bolster its standing. . ."); *Gossip Cop*, 87 F. Supp.3d at 506 ("[M]otive is a factual [question], making it inappropriate for dismissal at this stage.").

The second fair use factor requires analysis of the "nature of the copyrighted work" to determine whether it is: (1) fictional or factual; and (2) published or unpublished. *Coleman v. Home Box Off., Inc.*, 2019 WL 8645387, at *7 (E.D.N.Y. Aug. 6, 2019). Factual, published works are less protected than fictional, unpublished works. *Id.* However, this factor "rarely play[s] a

13

significant role in the determination of a fair use dispute" and "authors of factual works, like authors of fiction, should be entitled to copyright protection of their protected expression." *Id.* Here, the Photograph was published in the New York Post and is arguably "factual" in light of its journalistic purpose. However, without additional facts, the Court cannot find that this factor weighs in favor of fair use as *a matter of law*.

Third, the "amount and substantiality of the portion used" clearly weighs against the application of fair use. There is no question that Defendant reproduced the entirety of the Photograph on its website and CCYP. *See*, *Golden*, 524 F. Supp.3d at 63 (use of entire, unaltered image weighed against fair use).

Finally, Plaintiff plausibly has alleged that Defendant's conduct harmed the potential market for the Photograph. In weighing this factor, courts must consider whether the "secondary use[] . . . usurp[ed] a market that properly belongs to the copyright-holder." *Id.* As evidenced by Plaintiff's license to the New York Post, there was a market for the Photograph. Defendant "usurp[ed]" that market by using the Photograph without permission. Indeed, the "secondary market [for photographs] would be meaningless if . . . websites could use [them] without paying the licensing fee, even if few or no customers showed interest." *Id.* at 64; *See also*, *Cruz*, 444 F. Supp.3d at 471 ("If [defendant] could simply use such images for free, there would be little or no reason to pay for works." (internal quotation marks omitted)). Thus, Defendant has not established the fair use defense as a matter of law. *See*, *Smith*, 2023 WL 3570606 at *6.

### 5. Contributory and Vicarious Infringement

Contributory infringement applies where a defendant "induces, causes or materially contributes to the infringing conduct of another" with "knowledge of the infringing activity." *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010) (emphasis omitted). A defendant is

vicariously liable "if he ha[s] the right and ability to supervise the [third party's] infringing activity and also has a direct financial interest in such activities." *Klauber Bros., Inc. v. URBN US Retail LLC*, 2023 WL 1818472, at *7 (S.D.N.Y. Feb. 8, 2023) (quoting *Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)). "Without a showing of a direct copyright infringement, secondary liability cannot be maintained." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 197 (2d Cir. 2018).

Plaintiff claims that Defendant is vicariously and contributorily liable for publishing the Photograph on CCYP's website. Am. Compl. ¶¶ 75–99; Opp'n at 19–20. However, Plaintiff also alleges that the CCYP post is part of her direct infringement claim. *See*, Am. Compl. ¶ 71 (alleging that Defendant is subject to direct liability for "using [the Photograph] on the [CCYP] Account and Website"). Indeed, the Amended Complaint does not include a direct infringement claim *against CCYP*. Instead, it alleges that *Defendant* posted the Photograph on its CCYP account. *Id.* at ¶¶ 3, 54–56; *Cruz*, 444 F. Supp.3d at 463 (infringer directly liable for post on social media accounts). At most, CCYP could be vicariously or contributorily liable for hosting Defendant's post, not the other way around. *See*, *Myeress*, 2019 WL 1004184 at *4. Accordingly, the CCYP post constitutes direct infringement, not contributory or vicarious infringement. However, Plaintiff still may pursue the CCYP post as part of her direct infringement claim.

### B. DMCA Claims

The DMCA prohibits the removal or alteration of Copyright Management Information ("CMI") that is "'conveyed in connection with' creative works." *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 171 (2d Cir. 2020) (quoting 17 U.S.C. § 1202(c)). CMI consists of "[t]he name of, and other identifying information about, the author . . . [or] copyright owner of the work." 17 U.S.C. § 1202(c)(2)–(3). To establish a DMCA claim, a plaintiff must allege: (1) the existence of CMI in

connection with a copyrighted work; (2) that a defendant distributed works or copies of works; (3) while "knowing that [CMI] ha[d] been removed or altered without authority of the copyright owner or the law"; and (4) while "knowing, or . . . having reasonable grounds to know" that such distribution "will induce, enable, facilitate, or conceal an infringement." *Mango*, 970 F.3d at 171.

Defendant contends that the DMCA claim fails because: (1) DMCA claims are part of the damages analysis for copyright infringement, not a separate cause of action; (2) Plaintiff did not identify the CMI at issue; (3) an author's name alone is not CMI; and (4) Defendant did not remove the CMI with the requisite scienter. Def's. Mot. at 16–17. Plaintiff counters that Defendant's reproduction of the Photograph without the Gutter Credit constitutes unlawful removal of CMI pursuant to the DMCA. Opp'n at 22–23 (citing 17 U.S.C. 1202(b)).

As an initial matter, DMCA claims are independent from copyright infringement claims, as they address different injuries. Copyright infringement deprives plaintiffs of "the ability to control the timing and nature of the Photograph's publication and negotiate a licensing fee. . ." and the removal of CMI impairs plaintiffs' "right to attribution . . . [and] arguably, ma[kes] it easier for potential infringers to violate [their] rights. . .". *Olusola v. Don Coqui Holding Co., LLC*, 2021 WL 631031, at *5 (E.D.N.Y. Feb. 18, 2021). The cases cited by Defendant in support of its position are inapposite as they discuss whether and to what extent damages are awarded for both copyright infringement and DMCA claims, not whether they are separate claims to begin with. *See*, *Prokos v. Grossman*, 2020 WL 729761, at *3 (E.D.N.Y. Feb. 13, 2020); *Seelie v. Original Media Grp. LLC*, 2020 WL 136659, at *5 (E.D.N.Y. Jan. 13, 2020).

Here, Plaintiff plausibly has alleged that Defendant distributed her copyrighted work without the CMI that appeared in the original source. "[G]utter credits constitute CMI under the [DMCA]." *Mango v. BuzzFeed, Inc.*, 356 F. Supp.3d 368, 377 (S.D.N.Y. 2019), *aff'd*, 970 F.3d

16

167 (2d Cir. 2020); *Farrington v. Jewish Voice Inc.*, 2022 WL 541645, at *4 (E.D.N.Y. Feb. 23, 2022) (same). The New York Post Article included a Gutter Credit identifying Plaintiff as the author of the Photograph. *See*, Am. Compl. ¶ 101 & Ex. 5. Defendant's reproductions did not include the Gutter Credit. *Id.* Ex. 3. Defendant does not deny that it obtained the Photograph from the New York Post Article, and Plaintiff does not allege that she published it anywhere else.

The Amended Complaint also includes facts giving rise to a plausible inference of scienter. The Gutter Credit was visible directly below the Photograph in the New York Post Article. *See*, Am. Compl. Ex. 3. The close proximity of the Gutter Credit to the Photograph creates a reasonable inference that Defendant knew or should have known that removing the CMI would contravene the "authority of the copyright owner" and "induce, enable, facilitate, or conceal [its] infringement." *Farrington*, 2022 WL 541645 at *4 (granting default judgment where "the gutter credit had been displayed in the New York Post . . . and was removed," which created a "reasonabl[e] infer[ence] that Defendant knew that CMI had been removed or altered without Plaintiff's authority"); *Smith*, 2023 WL 3570606 at *6–7 (scienter plausibly alleged where defendant removed a gutter credit from the original source). Accordingly, Plaintiff has stated a claim for unlawful removal of CMI pursuant to the DMCA.

17

## **CONCLUSION**

For the reasons set forth above, Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is denied with respect to Plaintiff's direct copyright infringement and DMCA claims (Counts One and Four), but granted with respect to the vicarious and contributory infringement claims (Counts Two and Three).  However, Plaintiff still may pursue the CCYP post as part of the direct infringement claim.  Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) and 12(b)(7) is denied in its entirety.

SO ORDERED.

Dated: Brooklyn, New York
November 20, 2024

/s/
DORA L. IRIZARRY
United States District Judge